Joseph **BEIDLER**

v.

**W. R. GRACE, INC.**

**Civ. A. No. 78–2482.**

United States District Court,
E. D. Pennsylvania.

Nov. 21, 1978.

Nicholas Noel, III, Bethlehem, Pa., for plaintiff.

R. D. Greenfield, Bala Cynwyd, Pa., for defendant.

## MEMORANDUM AND ORDER

TROUTMAN, District Judge.

Plaintiff brings this action against defendant, his former employer, alleging that his discharge was a violation of an implied contract between himself and defendant, and that certain actions of defendant, in terminating plaintiff's employment, constituted wrongful harassment amounting to tortious infliction of mental and emotional distress.

Defendant moves to dismiss, contending that an employment contract is terminable at will and that there was no breach of contract in the termination of plaintiff's employment. Defendant also contends that there can be no tortious infliction of mental distress if there is neither fear of and danger of physical impact nor actual impact, and if the acts complained of are not extreme and outrageous and beyond the bounds of human decency.

Since 1891 the established law in Pennsylvania has been that in the absence of a specific restriction, either statutory or contractual, a contract of employment may be terminated at any time, for any reason or for no reason. *Henry v. Pittsburgh & Lake Erie Railroad Co.*, 139 Pa. 289, 21 A. 157 (1891). This law has recently been reit-

erated, *Geary v. United States Steel Corporation*, 456 Pa. 171, 319 A.2d 174 (1974) and has been adopted by the courts of this Circuit. *Davis v. U. S. Steel Supply*, 581 F.2d 335 (3d Cir. 1978); *McKinney v. Armco Steel Corporation*, 270 F.Supp. 360 (W.D.Pa. 1967); *Geib v. Alan Wood Steel Co.*, 419 F.Supp. 1205 (E.D.Pa.1976).

■ The law of Pennsylvania regarding contractual provisions of employment, and how they affect terminability, is set forth in *Cummings v. Kelling Nut Co.*, 368 Pa. 448, 451–2, 84 A.2d 323, 325 (1951):

"The general rule is that when a contract provides that one party shall render services to another, or shall act as an agent, or shall have exclusive sales rights within certain territory, but does not specify a definite time or prescribe conditions which shall determine the duration of the relation, the contract may be terminated by either party at will * * * (Citations omitted). The burden is on the plaintiff in such cases to overcome the presumption by showing facts and circumstances establishing some tenure of employment * * * (Citations omitted). The intention of the parties governs. One relying on the contract as providing for a reasonable length of time must establish something in the nature and circumstances of the undertaking which would create the inference that a definite or reasonable period of employment was actually contemplated by the parties."

See also *Jackman v. Military Publications, Inc.*, 350 F.2d 383 (3d Cir. 1965); *Green v. Medford Knitwear Mills, Inc.*, 408 F.Supp. 577 (E.D.Pa.1976). There is no natural or vested right to seniority; seniority arises only as a result of a contract express or clearly implied. *Madera v. Monongahela Railway Co.*, 356 Pa. 460, 52 A.2d 329 (1947); *Fawcett v. Monongahela Railway Co.*, 391 Pa. 134, 137 A.2d 768 (1958). In the absence of an agreement for a fixed period of time, a hiring is a hiring at will and gives no right of seniority. Under such a contract of hiring, either party may terminate the contract at will at any time. *Id.*

Stating that an employee's compensation is for a stated amount for a stated period does not make the contract one for a definite period, or even raise a presumption that the hiring was for such period. *Trainer v. Laird*, 320 Pa. 414, 183 A. 40 (1936).

■ In the case before us, there is no indication that there were any provisions for seniority, or if there were, that they applied to plaintiff. Exhibit A to the complaint indicates that there was a procedure to be utilized upon termination of employment. For instance, an "exit interview" was to have taken place outlining the reasons for termination; evaluations were to be made of employee performance and the employee was to be advised as to the basis for the evaluations, the method in arriving at decisions, and the strong points and shortcomings of an employee; penalties of suspension or dismissal, as well as reprimand, could be imposed for a series of offenses; immediate dismissal would be imposed for another series of graver offenses. See Complaint Exhibit A. Despite plaintiff's contentions that these regulations constitute the basis of an implied contract, there is nothing therein to indicate that they are seniority provisions. Absent a seniority provision, the law of Pennsylvania clearly and firmly holds that an employment contract may be terminated at any time for any reason by either party.

■ We note that *Geary v. United States Steel Corporation, supra*, indicated that the absolute right of an employer to discharge an employee at will may be modified, but refused to so modify the law based on the facts before the Court. This potential modification was acknowledged by the Circuit Court of Appeals for this Circuit in *Davis v. U. S. Steel Supply, supra*. However, as the Court in *Keddie v. Pennsylvania State University*, 412 F.Supp. 1264, 1278 (E.D.Pa. 1976) explained, such modification would occur upon the violation of a clear mandate of public policy, such as dismissal for refusal to commit perjury or dismissal for exercising a statutorily conferred right, such as filing for workmen's compensation benefits. There is nothing in the law of Pennsylvania

suggesting that failure to adhere to certain stated guidelines constitutes such violation of public policy. Other courts have held that failure to adhere to certain stated guidelines or policies by an employer in discharging an employee does not constitute a breach of an implied contract. See *Uriarte v. Perez-Molina*, 434 F.Supp. 76 (D.C. D.C.1977); *Johnson v. National Beef Packing Co.*, 220 Kan. 52, 551 P.2d 779 (1976); *Degen v. Investors Diversified Services, Inc.*, 260 Minn. 424, 110 N.W.2d 863 (1961). Therefore, we conclude that failure to adhere to company personnel policy does not create a cause of action for breach of an employment contract.

Plaintiff also seeks damages for tortious infliction of mental distress. Such tortious infliction can result from either intentional or negligent conduct. For intentional infliction to occur, there must be intentional, outrageous or wanton conduct, peculiarly calculated to cause serious mental or emotional distress. *Papieves v. Kelly*, 437 Pa. 373, 378, 263 A.2d 118 (1970). See also Restatement (2d) Torts, § 46. Plaintiff avers that he was harassed in the following ways:

"(a) being excluded from certain meetings that were necessary to the performance of his job and then being expected to be familiar with the subject matter of said meetings;

(b) finding that the materials and papers located on his desk were constantly being arranged so as to annoy and bother him;

(c) being told on February 22nd that he was being given a new 'assistant'; however, plaintiff had never been conferred with or notified prior to this date of this action nor was the plaintiff informed as to what plans were being made for this new 'assistant';

(d) never received any communication concerning his job performance from his superior, Jan Hansen, but received numerous communications from other employees and rumors that his job was in jeopardy;

(e) plaintiff requested a meeting with his superior, Jan Hansen, for the purpose of ascertaining his employment status, however, Mr. Hansen continually evaded the issue but made several intimations that the new 'assistant' would be replacing the plaintiff."

This conduct is not the type of extreme, outrageous conduct that gives rise to a cause of action. Thus plaintiff has not stated a cause of action for intentional infliction of mental or emotional distress. Nor has plaintiff stated a claim for negligent infliction of mental or emotional distress. For such a cause of action to lie, there must be, if not contemporaneous physical impact, at least personal danger of physical impact from the negligent force and fear of physical impact. *Niederman v. Brodksy*, 436 Pa. 401, 261 A.2d 84 (1970); *Papieves v. Kelly, supra.* Obviously, whatever concerns plaintiff had as regards his employment, he never feared physical impact and, if he did, there is no indication whatsoever that he was in danger of such impact. Thus, he has not stated a claim for infliction of mental or emotional distress.

Accordingly, defendant's motion to dismiss will be granted.